THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. DAVID LITTMAN AND SAMUEL WEINFELD, PLAINTIFFS IN ERROR.

Argued June 4, 1914—Decided December 10, 1914.

1. By virtue of section 75 of the Criminal Procedure act (*Comp. Stat., p.* 1845) a struck jury may be ordered in a criminal case.
2. An objection "that the proceedings for the drawing and striking of a jury are irregular and contrary to law," is too general and will not avail on error.
3. It is not essential to the validity of an order, made in open court by the judge of the Court of Oyer and Terminer, handing down an indictment to the Court of Quarter Sessions for trial, that the order be signed by the judge.
4. A judgment upon a conviction on an indictment for keeping a disorderly house will not be reversed because a challenge to the array, upon the ground of insufficient notice of the time and place of striking the jury. was overruled, when there was no evidence

before the trial court that the requisite notice was not given, and the record shows that the attorney of the defendant appeared before the court when the jury was selected and struck pursuant to section 76 of the Criminal Procedure act (*Comp. Stat.*, *p.* 1845), and that he participated in the striking of the jury without any objection as to the sufficiency of the notice.

5. On the trial of an indictment for keeping a disorderly house, acts of a disorderly character by persons in the house and what was said by them at the time as a part of those acts are admissible to establish the character of the house, irrespective of whether the alleged keeper was present or not.

6. A judgment in a criminal case will not be reversed for any error except such as may have prejudiced the defendant in maintaining his defence upon the merits.

7. Whether the frequenters of a house were of "evil name and fame. and of dishonest conversation" is a question of fact to be determined, not alone by their general reputation, but by their conduct and conversation while in the house.

8. Where a trial judge in a criminal case correctly defines a word at the request of a juror, and the defendant takes no specific exception thereto, the judgment will not be reversed merely because the judge did not then and there point out the distinction between the word defined and another word to which the judge had made no reference in his definition, when it appears that in the main charge such distinction was clearly pointed out.

9. To entitle a party to insist that a proper instruction requested by him should be given, a timely presentation of such request should be made to the court at or before the close of the evidence, and before the argument, unless the request presented has been made necessary by something the court has already charged or omitted to charge.

10. Where in a criminal case the trial judge in the exercise of his discretion has declined to charge proper requests not seasonably presented, the judgment will not be reversed when it appears that the defendant was not harmed by such refusal in view of the fact that the trial judge correctly charged the pertinent legal proposition embodied in such requests.

On error to the Essex County Quarter Sessions Court.

Before Justices Trenchard and Bergen.

For the plaintiffs in error, *Edward Schoen.*

For the state, *Louis Hood.*

The opinion of the court was delivered by

TRENCHARD, J.  This case comes up for review on a strict bill of exceptions and also under section 136 of the Criminal Procedure act.

The defendants were convicted on an indictment charging them with keeping a disorderly house in the city of Newark. Among other illegal practices specifically set out in the indictment was that the defendants willingly caused and procured men and women "of evil name and fame and of dishonest conversation" to frequent the defendants' house and there willfully permitted them to remain "soliciting and making assignations for sexual commerce." The proof produced by the state was mainly directed to that charge.

We are of the opinion that there is no merit in the assignment of error based upon an exception to the action of the court below in overruling an objection made to the striking of the jury.

This is what happened:

"Mr. Schoen—I want to enter an objection to the striking of the jury, first, on the ground that there is no authority in the Jury act for a struck jury, and secondly, that the proceedings for the drawing and the striking of a jury are irregular and contrary to law.

"The Court—In what particular?

"Mr. Schoen—The proceedings are not according to statute.

"The Court—I think, unless you point out the irregularity, that your objection is not well taken. If you make an objection to any proceedings and fail to point out where they are objectionable, I do not see that it is going to avail you very much.

"Mr. Schoen—I will just make an objection in that form. There has been no adjudication by the court upon the reasons for a struck jury.

"The Court—The objections will be noted on the record, and I will overrule them.

"Defendants' counsel prays an exception to this ruling of

the court, and the same is allowed and signed and sealed accordingly. Harry V. Osborne, Judge. [L. S.]."

There is no merit in the contention that there is no authority for a struck jury. By virtue of section 75 of the Criminal Procedure act *(Comp. Stat., p.* 1845) a struck jury may be ordered in a criminal case. *State* v. *Brown,* 62 *N. J. L.* 666.

The objection "that the proceedings for the drawing and striking of a jury are irregular and contrary to law," is too general and will not avail on error. *Fowler* v. *State,* 58 *N. J. L.* 423; 59 *Id.* 585.

The contention that "there was no adjudication by the court upon the reasons for a struck jury," is not well founded in fact, since the record shows that the court *ordered* a jury to be struck for the trial of the case pursuant to the statute.

It is next insisted that the Court of Quarter Sessions had no jurisdiction to try the case because "there is no order *signed by the presiding judge* of the Court of Oyer and Terminer transferring this cause to the Court of Quarter Sessions for trial."

It will be observed that the contention is not that there was no order handing down the indictment to the Court of Quarter Sessions for trial, but merely that such order was not signed by the presiding judge of the Court of Oyer and Terminer.

We think there is no merit in the contention.

The statute provides that when any indictment, which the Court of Quarter Sessions is competent to try, shall be found in the Court of Oyer and Terminer, "it shall be lawful for such court at any time during their session, if they think proper, to order the said indictment * * * to be delivered to the clerk of the said Court of Quarter Sessions, who is hereby directed to file the same, and also to make entry thereof in the minutes; * * * and after such filing the said Court of Quarter Sessions shall have authority * * * to hear and determine such indictment," &c. *Crim. Pro. act,* § 8; *Comp. Stat., p.* 1822.

Now, an examination of the record in the present case shows that at a session of the Court of Oyer and Terminer the presiding judge thereof made such order; that the indictment was duly delivered to and was filed by the clerk of the Court of Quarter Sessions, and that an entry of such order and delivery and filing was then and there made in the minutes as provided by the statute.

We conclude, therefore, that the Court of Quarter Sessions had jurisdiction to try the indictment, even though such order was not signed by the judge of the Court of Oyer and Terminer.

It is next urged that the judgment should be reversed, because the court overruled a challenge to the array made upon the ground that six days' previous notice was not given to the defendants or their attorney of the time and place of striking of the jury as directed by the statute. *Comp. Stat., p.* 2974, ¶ 24.

We think that such insistence is without merit for two reasons—*first,* because there was no evidence before the trial court that the requisite notice had not been given, and *secondly,* the record shows that the attorney of the defendants appeared before the court, when the jury was selected and struck pursuant to section 76 of the Criminal Procedure act (*Comp. Stat., p.* 1845), and that he participated in the striking of the jury, without any objection as to the sufficiency of the notice.

It is next urged that the trial judge erred in the admission of evidence of the acts and conversations of persons in the defendants' restaurant, not in the presence of the defendants. Not so. The testimony falls within the rule that acts of a disorderly character by persons in a house, and what was said by them at the time as a part of those acts, are admissible to establish the character of the house, irrespective of whether the alleged keeper was present or not. Of course, since the purpose and effect of such evidence is only to establish the character of the house, and not to charge the defendant with keeping it, before he can be convicted of that offence evidence sufficient to establish his connection, management or control

of such a place must be adduced. *Bindernagle* v. *State,* 60 *N. J. L.* 307. But that is another matter.

The next reason urged for reversal is that the trial judge allowed to be put to a woman frequenter of the defendants' house this question, "Did you solicit?" It is quite clear that the grounds of objection stated to the trial judge were not well founded, and they are not now pressed. It is here urged, however, that the question was objectionable as calling for the conclusion of the witness. But an examination of the testimony shows that the witness described her acts and conduct, and makes it quite clear that what she called "soliciting" was to signal to men to come to her table in the defendants' restaurant, and there attempt to induce them to leave the place with her for the purpose of illicit intercourse. We conclude, therefore, that, if the allowance of the question was erroneous at all, it was not prejudicial, and we will not reverse for any error except such as may have prejudiced the defendants in maintaining their defence upon the merits.

The same may be said with respect to the question put by the state to the witness Plate. If the question was objectionable, its allowance was not prejudicial error, because the answer was unobjectionable and harmless to the defendants.

It is next contended that the trial judge should have directed an acquittal because there was no proof of the general reputation of the men and women upon whose presence, conduct and conversation in the defendants' restaurant the state relied for conviction. This contention has no foundation in law. Whether the frequenters of the house were of "evil name and fame and of dishonest conversation," was a question of fact to be determined, not alone by their general reputation, but by their conduct and conversation while in the house. There was abundant evidence that men and women of that character habitually frequented the defendants' house. Whether such testimony was credible was a question for the jury.

It is also contended that an acquittal should have been directed because there was no evidence that the defendants had knowledge of the evil conduct of the frequenters of their

house. This contention has no foundation in fact. There was ample evidence from which the jury could find such knowledge.

The next point is that "manifest wrong and injury resulted to the plaintiffs in error in the charge of the court in defining the word 'procure' in response to the request of a juror for a definition of the same." We find no merit in the point. What happened was that the judge in response to the juror's request read the definition of the word as it appears in the Century Dictionary. No specific exception was taken to this, and no objection is now made to what the judge said. The complaint is that he did not point out "the distinction between procuring an act to be done and suffering it to be done." But this the judge was not requested to do, and we see no reason why he should have done so on his own initiative, for he had made no reference to "suffering an act to be done." Moreover, it appears that in his main charge the judge has correctly instructed the jury that knowledge by the defendants of the unlawful practices alleged to have been carried on in their house was essential to a conviction. Therefore, no manifest wrong or injury resulted to the defendants from that instruction.

Lastly, the defendants claim that the judgment should be reversed because of the refusal of the trial judge to charge twenty-eight requests. We think not. Timely notice was given counsel that requests to charge must be submitted before the argument began. They were not presented until near the close of the argument of counsel for the defendants which occupied a part of two different days. Whether, in such circumstances, the requests were to be charged was a matter resting within the discretion of the trial judge. The rule is, that to entitle a party to insist that a proper instruction requested by him should be given, a timely presentation of such request should be made to the court at or before the close of the evidence, and before the beginning of the argument, unless the request presented has been made necessary by something the court has already charged or omitted to charge. *Dunne* v.

*Jersey City Galvanizing Co., 73 N. J. L. 586; Carmony v. West Jersey, &c., Railroad Co., 78 Id. 552.*

But the defendants argue that such failure to charge the requests was an abuse of such discretion and resulted in manifest wrong and injury to the defendants. We think not. Some of the requests were improper, some were inapplicable to the case, and those that were applicable were charged in substance. Instructions are intended to give to the jury a clear and concise statement of the law governing the case. That was done in this case. To duplicate and elaborate them might well tend to confuse, rather than to guide, the jury. Particular stress is laid in the argument upon a number of such requests embodying in varying phrase the pertinent legal proposition that knowledge by the defendants of the immoral practices claimed to have been carried on in their place was essential to conviction. But the judge so charged in strict accordance with the rule laid down in *State* v. *Mausert*, 85 N. J. L. 498, and the defendants suffered no manifest wrong and injury by the refusal to repeat or elaborate the instruction in the same or varying phrase.

This disposes of every question argued.·

The judgment will be affirmed.